**IN THE COURT OF APPEALS OF IOWA**

No. 17-0769
Filed May 2, 2018

IN RE THE MARRIAGE OF JAMES BENJAMIN MERTZ
AND COLLEEN SHERREE HASSLER

Upon the Petition of
JAMES BENJAMIN MERTZ,
        Petitioner-Appellee,

And Concerning
COLLEEN SHERREE HASSLER,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Kossuth County, Don E. Courtney,

Judge.


        A mother appeals the provision of a dissolution of marriage decree granting

the father physical care of their child.  **AFFIRMED.**


        Tammy Westhoff Gentry and Gina Messamer of Parrish Kruidenier Dunn

Boles Gribble Gentry Brown & Bergmann, L.L.P., Des Moines, for appellant.

        Matthew G. Sease of Kemp & Sease, Des Moines, for appellee.


        Heard by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the provision of a dissolution of marriage decree granting the father physical care of their child.

## I.    *Background Facts and Proceedings*

Colleen Hassler and James Mertz had a child in 2012 and married the following year.  The child lived in Ankeny with Hassler for the first six months of her life.  Then, Hassler and her twin children from an earlier marriage moved into Mertz's home in Algona.  The arrangement was short-lived.

In 2014, Mertz petitioned for a dissolution of the marriage.  The proceedings dragged on for two-and-a-half years.

Initially, Mertz obtained an order restraining Hassler from moving from Algona.  The order was later lifted, and Hassler moved to Ankeny to be closer to her family and to take advantage of the broader employment market.  The district court granted her temporary physical care of the child, subject to visitation with Mertz.

Several months later, Mertz moved to Ankeny to be closer to his child.  In light of the move, he asked the court to modify the temporary order and grant the parents joint physical care of the child.  The district court denied the request but afforded him a midweek visit in addition to the previously scheduled alternate weekend plan.  Mertz participated in the visits and took advantage of unscheduled visitation time afforded by Hassler.

At trial, both parents sought physical care of the child.  Mertz alternatively asked for joint physical care, a request he later withdrew.  Following trial, Mertz filed motions to reopen the record, based on various circumstances.  The district

court granted certain motions and considered the evidence in making the physical care decision.

In a detailed ruling, the district court began by finding that both Hassler and Mertz "actively cared for the child before and since the separation" and "contributed to" the child's development into "a healthy, happy, and friendly child." The court also commended Hassler's "generous allowance" of additional summer visitation to Mertz and her facilitation of FaceTime contact with Mertz. But the court expressed concern with "the failure of the parties to communicate, show each other mutual respect, and the degree of conflict between them." The court cited the parents' dueling complaints to the department of human services, complaints that proved unfounded. Ultimately, the court was more troubled by Hassler's negative behaviors, "often in the presence of the child[]," than by Mertz's conduct. The court stated:

> Of particular concern to the court is how a young child is led to believe that her father did not want her for Christmas or how the young child learned to refer to her father as a loser. This and the constant accusations of infidelity and the use of obscenity around the child are contrary to the principle that the relationship with James should be supported.

The court concluded Mertz would "better support the relationship" with the other parent and granted him physical care of the child. Hassler appealed.

## II. *Physical Care*

"Physical care" involves "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2014). One of the factors for consideration is whether "each parent can support the other parent's relationship with the child." *See id.* § 598.41(3)(e); *In re Marriage*

*of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007) (conceding "Iowa Code section 598.41(3) does not directly apply to *physical care* decisions" but stating factors were relevant to determining joint physical care).

Hassler contends, "The objective evidence shows [she] went above and beyond to promote E.M.'s relationship with her father." We agree. Hassler fostered the child's relationship with Mertz by granting unscheduled visitation time and by facilitating electronic contact. But she also disparaged Mertz in front of the child, interjected criticisms of Mertz during FaceTime conversations between Mertz and the child, and referred to Mertz by his first name in speaking to the child. As the district court stated, these behaviors did not go unnoticed by the child, who began using terminology beyond her ken.

The district court credited Mertz's testimony on this issue. We give weight to the credibility determination, in light of our inability to see and hear the witnesses. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). On our de novo review, we conclude the district court acted equitably in granting Mertz physical care of the child.

In reaching this conclusion, we have considered Mertz's allusions to Hassler's mental health, which Hassler argues were beyond the pale. We agree. At his attorney's behest, and without medical evidence, Mertz used incendiary language to describe Hassler's emotional state. His inappropriate and unsupported characterizations carry no weight in our review of the physical care decision.

We also have considered the bond the child shared with her fifteen-year-old half-siblings. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa

1993). We do not doubt the existence of a bond among the siblings. But a parent's refusal to support the relationship of the child with the other parent can override the sibling bond in a physical care determination. *See id.* (concluding custodial parent's interference with noncustodial parent's visitation rights provided adequate ground for change of custody, notwithstanding separation from half-sibling). In any event, Hassler coordinated her weekend visitation schedules to facilitate contact among the siblings, mitigating concerns that the bond would be weakened.

Finally, and most critically, we have considered Hassler's role as primary caretaker. *Hansen*, 733 N.W.2d at 700 ("In making [a physical care] decision, the factors of continuity, stability, and approximation are entitled to considerable weight."). The court acknowledged this role but concluded "there would be little effect on the child of disrupting the existing custodial status because of the liberal visitation allowed the non-custodial parent and the geographical location of the parties." We concur in this assessment.[1]

### III.    Appellate Attorney Fees

Hassler seeks an award of appellate attorney fees. Because she did not prevail, we decline her request. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).

**AFFIRMED.**

Bower, J., concurs;  Danilson, C.J., dissents.

---

[1] Hassler makes a fleeting reference to increased visitation. The court afforded her liberal visitation, including alternating weeks during the summer. Equity does not demand an even more liberal visitation plan.

**DANILSON, Chief Judge** (dissenting)

I respectfully dissent. I do not believe physical care should be determined by weighing which parent was more critical of the other. Neither parent's conduct towards the other was above reproach. In fact, Mertz's trial testimony was highly critical of Hassler. It is not unusual for the stress of the separation to impact the parties and their ordinary demeanor. The district court concluded both parents were suitable parents, Hassler was very generous with visitation with Mertz, and the child was thriving in the care of Hassler. I agree. Additionally, the parties' child, E.M., has a strong relationship with Hassler's twin daughters from a prior relationship, one of which resides with Hassler. The presumption that siblings, even half-siblings, should not be separated provides further support to award physical care to Hassler. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). I would reverse and award physical care and appellate attorney fees to Hassler.